73 N.J. Super. 384 (1962)
180 A.2d 156
THE LOCAL BOARD OF HEALTH OF THE TOWNSHIP OF BERKELEY, RESPONDENT,
v.
JAMES E. JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1962.
Decided April 5, 1962.
*385 Before Judges PRICE, SULLIVAN and LEWIS.
*386 Mr. James E. Johnson, appellant, argued the cause pro se (Mr. J. Herbert Josephs, on the brief).
Mr. William Henry Mee argued the cause for respondent.
The opinion of the court was delivered by LEWIS, J.A.D.
Defendant James E. Johnson was represented by counsel "on the brief" but appeared pro se at oral argument. Johnson was convicted by the local municipal court for engaging in the practice of plumbing, without a permit and a master plumber's license, in violation of the plumbing ordinance in the Township of Berkeley. The Ocean County Court, at a trial de novo on the record below, found the defendant guilty and imposed a fine of $100 and costs on each of two counts.
On March 24, 1960 respondent, Local Board of Health of the Township of Berkeley, adopted by ordinance Part E of the "Standard Building Code of New Jersey," which part is commonly identified as the "Plumbing Code of New Jersey (1953)," approved December 29, 1953 by the State Department of Health for adoption by reference by local boards of health. See N.J.S.A. 40:49-5.1 and N.J.S.A. 26:3-31.1. It was stipulated that on June 21-22 1960 Johnson and his wife were the owners of property known as Korman's Bar and Restaurant, then under construction; defendant had obtained a building permit prior to the effective date (30 days after its first publication) of the plumbing ordinance; and that defendant did not have a plumbing permit or a master plumber's license to practice plumbing in the Township of Berkeley.
The procedural formalities and legislative authority for the referential adoption of the plumbing code are not in dispute. Defendant asserts on appeal that the aforesaid plumbing code is unconstitutional and that his conviction was against the weight of the evidence.

*387 THE CONSTITUTIONAL QUESTIONS.
(1) Johnson maintains that the code does not reasonably relate to public health, safety and welfare. We do not agree. The necessity to regulate building construction has been recognized since the early days of civilization. Municipalities and the Law in Action (1952 ed.), Report of Committee on Building Codes and Fire Prevention Ordinances, pp. 416, 417. See also 7 McQuillin, Municipal Corporations (3d ed. 1949), sec. 24.538, p. 522. Boards of health are "governmental agencies by which the police law of the state is locally exerted." Fredericks v. Board of Health, West Hoboken, 82 N.J.L. 200, 202 (Sup. Ct. 1912); Zullo v. Board of Health, Woodbridge Twp., 9 N.J. 431, 436 (1952). It was said in Bd. of Health, Plainfield v. Chas. Simkin & Sons, Inc., 10 N.J. Super. 301, 305 (Cty. Ct. 1950): "As a general policy, the law has created for master plumbers, on the ground of health protection, a necessity to be examined and licensed and this is an added protection to the public, in addition to requiring proper building plans." The cases are myriad in New Jersey, and need not here be assembled, which proclaim that the safeguarding of public health is a vital element of the sovereign police power. R.S. 26:3-64 authorizes boards of health to enact health ordinances, and under N.J.S.A. 26:3-31(e) such boards are specifically empowered to regulate the practice of plumbing, issue licenses, create examining boards and determine the qualification of applicants. There is no doubt that the regulation under review has a substantial relation to public health, safety and welfare.
(2) Next, it is urged that the standards are inadequate. On this point the code speaks for itself. In extensive terms it includes definitions, general regulations, specifications for materials, and detailed provisions for inspections, tests, licensing and administration. The scope of the ordinance covers minimum safety and health requirements respecting all plumbing and building within the municipality *388 and the regulatory provisions are general in their application. The mere fact that a distinction is not made between completed buildings and those under construction does not vitiate the ordinance for want of standards, particularly so as in the present case the effective date of the ordinance was not until 30 days after its first publication. If defendant's building was under construction when the ordinance was adopted, he had a reasonable time within which to complete the plumbing work or to meet the permit-licensing requirements before the ordinance became operative. Moreover, there is no proof that any plumbing had been started prior to its effective date, and there is no evidence that defendant or any of his employees made an effort to comply with the code requirements. Weiner v. Borough of Stratford, 15 N.J. 295 (1954), is clearly distinguishable. In that case the licensing ordinance related to "any business, trade or calling" and there was a "complete absence of any standards guiding the determination of the borough council."
(3) Defendant contends the ordinance constitutes an unreasonable interference with a person's right to work and an employer's right to employ. We are directed to subsection 14.1 of the code, entitled "Permits," which requires a permit from the administrative authority before any plumbing work is performed (certain minor plumbing activities being excepted) and that permits shall be issued only to master plumbers (subject to certain limited exceptions); also to subsection 14.5, entitled "License Required," that states inter alia a "person shall not engage in the practice of plumbing unless such person holds a valid master plumber's license issued by the Administrative Authority." A master plumber is defined in the code to be "A person who has had at least two years of experience as a journeyman plumber and is licensed as a master plumber and is engaged in the business of plumbing."
It appears that defendant is the owner, builder and manager of numerous properties (commercial and dwelling-units), some of which are situate in Berkeley Township; *389 he employs his own repair crew of mechanics, including plumbers none of whom is licensed in that township; and defendant himself is a master plumber, likewise not licensed in Berkeley Township. Johnson maintains that neither the Legislature nor any governmental agency may alienate the right of a laborer to sell his services or an employer to purchase the same. He complains that under the plumbing ordinance a permit cannot be issued to a non-licensed employer of plumbers, and that it may be issued only to a licensed master plumber  who is "virtually forced into being in business for himself." Thus, it is argued, the new ordinance imposes arbitrary and unreasonable restrictions which preclude defendant from continuing to operate his business in the township.
Reliance is placed upon Schroeder v. Binks, 415 Ill. 192, 113 N.E.2d 169 (Sup. Ct. 1953), wherein it was declared that the provisions of a state plumbing-license law, which required the supervision by master plumbers of all plumbing work done by journeymen or apprentices, were unconstitutional as violating the due process of law clause of the Illinois State Constitution and the terms of that instrument prohibiting the passage of special laws, and also as violating due process of law and the equal protection clauses of the Federal Constitution. There was considerable testimony in that litigation concerning the comparable skill of a master plumber and a journeyman plumber, and, from the evidence revealed in the record, the court concluded that the "roots" of the legislative regulation appeared to "reach back to an economic pattern which is anachronistic today." Other invalidating cases, involving the same or similar provisions, characterized as economic or monopolistic measures for the licensing of master plumbers, include People v. Brown, 407 Ill. 565, 95 N.E.2d 888 (Sup. Ct. 1950); City of Sioux Falls v. Kadinger, 74 S.D. 217, 50 N.W.2d 797 (Sup. Ct. 1951); Hench v. Michigan State Plumbing Board, 289 Mich. 108, 286 N.W. 176 (Sup. Ct. 1939). But see the concurring opinion of Chief Justice Butzel in the Hench *390 case wherein he was in accord with the majority on the procedural issues, but upheld the constitutionality of the regulation.
In People ex rel. Stepski v. Harford, 286 N.Y. 477, 36 N.E.2d 670 (Ct. App. 1941), the court construed the Plumbing Code of the City of Newburgh (adopted by the board of health and the board of plumbers and plumbing of that municipality under authority conferred by General City Law) which included a provision that: "None but licensed master plumbers will be permitted to alter, repair or make connections to any part of the plumbing system." The defendant there was charged with disconnecting a coal range from a plumbing system and thereafter installing and connecting thereto a pot stove. The Newburgh code was called into question as not being within the governmental police power. The court held:
"It is not unreasonable for municipal authorities to insist that the responsibility for altering, repairing or making connections to any part of the plumbing system in their cities shall be upon men of good repute, character and responsibility who have a place of business in the affected city, who have passed an examination as to their competency in their trade and who may be personally found promptly and held to that responsibility, by the municipality or its residents, for acts of commission or omission by themselves or those whom they have employed. We know of no trade, business or calling in the community which more vitally affects the public health and safety of city dwellers than that of plumbing." (36 N.E.2d, at p. 673)
Accord, People ex rel. Nechamcus v. Warden of City Prison, 144 N.Y. 529, 39 N.E. 686, 27 L.R.A. 718 (Ct. App. 1895), but note dissenting opinion by Justice Peckham; Roundtree Corporation v. City of Richmond, 188 Va. 701, 51 S.E.2d 256 (Sup. Ct. App. 1949). Cf. Spielvogel v. Ford, 1 N.Y.2d 558, 136 N.E.2d 856 (Ct. App. 1956), appeal dismissed 352 U.S. 957, 77 S.Ct. 362, 1 L.Ed.2d 316 (1957). For additional authorities supporting the respective views enunciated in the Illinois and New York decisions see Annotation, "Validity of regulations as to plumbers and plumbing," 22 A.L.R.2d 816.
*391 There is nothing apparent in the plumbing ordinance-code of Berkeley Township which arbitrarily denies to a citizen his inherent and inalienable right to engage in a legitimate activity in conformity with his own free will and accord. If he wishes to become a journeyman plumber, he may do so; and if he wishes to engage in the business of plumbing as a master plumber, that right is afforded him, subject to establishing competency and obtaining an appropriate permit and a license evidencing his qualifications. There is no requirement that the master plumber employ anyone, nor is there any restriction as to whom he may employ.
We do not in this opinion pass upon the constitutionality of the several provisions of the Plumbing Code of New Jersey (as adopted by respondent), except only as the same relate to the issues and the meager facts presently involved on appeal. The action of the board, in adopting a plumbing code, was lawful in its intended purpose to delimit the plumbing business in the municipality to experienced and competent persons qualified to perform plumbing work and to engage in such a business. Absent specific proof and evidence to the contrary, it would be "a misuse of language to speak of such provisions [plumbing regulations] as creating, or even tending to create, a monopoly." People ex rel. Nechamcus v. Warden of City Prison, supra, 39 N.E., at p. 689. The proofs on behalf of the defendant are limited to the testimony of two of his employees who merely testified as to their versions of what transpired on the occasions of the plumbing inspector's visits. We cannot deal in pure supposition; nor can we import and adopt the evidence and facts recited in the Illinois decision, Schroeder v. Binks, supra, as the basis upon which the Plumbing Code of New Jersey is to be interpreted and applied. The wisdom and policy determinations of the legislative and quasi-legislative bodies, reflected in the state plumbing code as adopted locally, are not appropriate matters for judicial review.
There attaches to a municipal ordinance a presumption of validity which is overcome only by a "clear *392 showing that it is arbitrary or unreasonable." Kozesnik v. Montgomery Twp., 24 N.J. 154, 167 (1957), and the judiciary is under constitutional mandate to construe "any law concerning municipal corporations formed for local government" liberally in their favor. 1947 Constitution, Art. IV, Sec. VII, par. 11. See Moyant v. Borough of Paramus, 30 N.J. 528, 534 (1959). Moreover, where construction of an ordinance is susceptible of two possible interpretations, by one of which the law would be unconstitutional and by the other it would be valid, the court should adopt a construction which would uphold the ordinance. Adams Newark Theatre Co. v. City of Newark, 22 N.J. 472, 478 (1956), affirmed 354 U.S. 931, 77 S.Ct. 1395, 1 L.Ed.2d 1533 (1957). See also 3 Sutherland, Statutory Construction (3d ed. 1943), sec. 5823, p. 118. The record under review does not justify a finding of invalidity or that defendant's constitutional rights, under the circumstances, have been violated.

THE WEIGHT OF THE EVIDENCE.
The local plumbing inspector, Robert George Lange, testified that on June 21, 1960 he visited defendant's property (Korman's Bar and Restaurant) at the "Shopping Center." On that visit he saw two men working around the plumbing system. They were "checking out water pipes and were putting a test on them, they had all the rest of their tools and stuff there." He advised that they should not be so working without a permit, whereupon Johnson appeared, "spoke up and said that he is the plumber, if there was any complaints I should handle them through him and not his men." At that time Lange noticed a vent that had been incorrectly installed and told Johnson that it would be "wise to have it remedied." The following day the plumbing inspector returned to the premises and observed "plumber's tools spread all over." Although he did not then actually see any men working, he noticed changes that had been made since the previous day in "the piping arrangement." *393 Lange further testified that later in the week  "I believe it was a Thursday night"  Johnson had appeared at a meeting of the local board of health with regard to his plumbing activities at the Korman property and stated that "he [Johnson] worked Tuesday and Wednesday [June 21, 22] in Korman's Bar and Grill Restaurant on his plumbing system."
Oscar Buckalew, an uncle of Johnson by whom he had been employed seven or eight years, was a witnes for the defense and testified that he was a master plumber in Dover Township but he was unlicensed in Berkeley Township; he was working in and around the Korman property on June 21; he put "water to the pipes and tested it for leaks," asserting it was not plumbing work; he assisted in changing the "vent" or "stack" as suggested by Lange, stating it was done at the direction of Lange, not Johnson; he admitted defendant "was the boss-man on that job there on June 21 and June 22," and that Johnson furnished the plumbing tools and the truck equipped for plumbing.
Stephen Kopcho, the other employee-witness for Johnson, referred to himself "as a helper; plumber, electrical." He testified that he was an unlicensed plumber and that he was assisting Buckalew on June 21 when Lange objected to the manner of certain plumbing installation work. He admitted that all the plumbing tools belonged to Johnson.
Defendant did not take the witness stand on his own behalf, notwithstanding Lange's testimony that defendant admitted before the board of health he was engaged in plumbing work at his property in the township on the two days in question. Failure to come forward and testify under such circumstances was properly noted by the municipal judge and by the judge of the County Court. N.J.S. 2A:84A-17(4). They had the right to assume that defendant could not deny the inculpatory evidence advanced against him. State v. Ingram, 67 N.J. Super. 21 (Cty. Ct. 1961). The defendant, at oral argument, attempted to explain his reasons for not taking the witness stand and what his testimony *394 would have been had he done so. The privilege extended to lay-defendant to argue pro se before this court must necessarily be subject to the same rules that would apply to counsel; it does not confer a right to voluntarily and unilaterally expand the record.
There was ample direct and circumstantial evidence to support the conviction.
Affirmed.