255 N.J. Super. 488 (1992)
605 A.2d 743
THE MECHANICAL CONTRACTORS ASSOCIATION OF NEW JERSEY, INC.; THE NEW JERSEY ASSOCIATION OF PLUMBING-HEATING-COOLING CONTRACTORS, INC.; WILLIAM J. BULMAN; M & R MECHANICAL CONTRACTORS, INC.; GARNET PLUMBING & HEATING CO., INC.; GERD W. VOGES; AND JOSEPH L. ROSSI, PLAINTIFFS-APPELLANTS,
v.
STATE OF NEW JERSEY; ROBERT J. DEL TUFO, ATTORNEY GENERAL OF NEW JERSEY; AND MELVIN R. PRIMAS, COMMISSIONER OF THE DEPARTMENT OF COMMUNITY AFFAIRS, DEFENDANTS-RESPONDENTS, AND HEAVY & GENERAL LABORERS LOCAL UNION NO. 472, AN UNINCORPORATED LABOR ORGANIZATION; HEAVY & GENERAL LABORERS LOCAL UNION NO. 172, AN UNINCORPORATED LABOR ORGANIZATION; ALPHONSO PEREZ, AN INDIVIDUAL AND MARK GIBSON, AN INDIVIDUAL, AND UTILITY & TRANSPORTATION CONTRACTORS ASSOCIATION OF NEW JERSEY, INC., A NOT-FOR-PROFIT CORPORATION OF THE STATE OF NEW JERSEY; JAMES CONSTRUCTION CO., INC., A NEW JERSEY CORPORATION; FRANKLYN M. GROSSO; AND JOSEPH D. D'ANNUNZIO, INTERVENORS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1991.
Decided April 14, 1992.
*490 Before Judges J.H. COLEMAN, STERN and KEEFE.
Bruce P. Ogden argued the cause for appellants (Lindabury, McCormick & Estabrook, attorneys; Bruce P. Ogden on the brief).
Bertram P. Goltz, Jr., Deputy Attorney General, argued the cause for respondent State of New Jersey (Robert J. Del Tufo, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Bertram P. Goltz, Jr. on the brief).
James R. Zazzali argued the cause for respondents Heavy & General Laborers Local Union Nos. 472 and 172 et als. (Zazzali, Zazzali, Fagella & Nowak, attorneys; James R. Zazzali, of counsel; Robert A. Fagella on the brief).
*491 Steven E. Brawer argued the cause for respondents Utility & Transportation Contractors Association of New Jersey, Inc., et als. (Mandelbaum, Salsburg, Gold, Lazris, Discenza and Steinberg, attorneys; Steven E. Brawer of counsel and on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Plaintiffs appeal from a judgment entered on February 19, 1991, denying their motion for summary judgment and granting the cross motions for summary judgment filed by defendants and intervenors. The trial judge "[a]djudged and decreed that N.J.S.A. 45:14C-2(g) is unconstitutional." We affirm the judgment.

I.
In January 1988, by L. 1987, c. 442, effective January 15, 1988, the Legislature adopted N.J.S.A. 45:14C-2(g), as part of a package to establish a uniform licensing requirement for plumbers. Subject to certain "grandfather" provisions for the holders of a "master plumber's license," see N.J.S.A. 45:14C-12.1, -16, the legislation eliminated the licensing of plumbers at the local level (see N.J.S.A. 45:14C-12.2, -14), provided for licensing only by the State Board of Examiners of Master Plumbers (see N.J.S.A. 45:14C-12.3, -15), and permitted only "licensed master plumbers" to act as "plumbing contractor[s]." See N.J.S.A. 45:14C-2(h). N.J.S.A. 45:14C-2 defines the basic terms as used in the Act,[1] and N.J.S.A. 45:14C-2(g) provides:
"plumbing" means the practice, materials and fixtures used in the installation, maintenance, extension, alteration, repair and removal of all piping, plumbing *492 fixtures, plumbing appliances and plumbing apparatus in connection with any of the following: sanitary drainage, storm facilities and building sewers to their respective final connection to an approved point of disposal, venting systems, public and private water supply systems of any premises to and within the property line of any building, structure or conveyance to their final connection with an approved supply system. Plumbing shall also mean the practice and materials used in the installation, maintenance, extension, alteration, repair or removal of storm water, refrigeration and air conditioning drains, liquid waste or sewage. (emphasis added).
N.J.S.A. 45:14C-2(h) defines "plumbing contractor" as "any licensed master plumber, firm, partnership, corporation or other legal entity which undertakes or offers to undertake for another the planning, laying out, supervising, installing or making of additions, alterations and repairs in the installation of plumbing."[2]N.J.S.A. 45:14C-2(h) further provides that "[i]n order to act as `a plumbing contractor,' a licensed master plumber shall be the holder of not less than 10% of ... the ownership of any other firm or legal entity engaging in the business of plumbing contracting in the State and shall employ either journeymen plumbers or apprentice plumbers or both."
After the amendment took effect, municipal code officials questioned whether they were required to grant installation permits regarding underground water, sewer and drainage pipes on "construction sites" (i.e. between the structure and the property line) only to a "plumbing contractor." In response to questions regarding the new policy and practices relating to the granting of permits by plumbing subcode officials and plumbing inspectors, the Attorney General issued a formal opinion letter to the Department of Community Affairs and to the State Board of Examiners of Master Plumbers concluding that

N.J.S.A. 45:14C-2(g), insofar as it reserves the installation or removal of piping and plumbing fixtures necessarily related thereto for any water supply, sanitary *493 (sewer) or storm drainage systems located between a property line and a building located on such property and reserves such work to licensed master plumbers, is unconstitutional and, therefore invalid and unenforceable.
It also concluded that "a license issued by the Board may not be legally required to perform the work of installing piping and the necessary fixtures for providing water, sewer and drainage systems between a structure and the property line for the parcel on which the structure is located."
Plaintiffs thereafter filed this complaint and sought injunctive relief against the Attorney General and the defendant state agencies, seeking to enforce the statute and prohibiting non-enforcement of the Act's licensing requirements. The trial judge, in a comprehensive opinion, concluded:
Absent any apparent or demonstrated rational distinction between the work inside and outside the property/curb line, or any reason why the distinction between the work inside and outside the property/curb line, or any reason why the distinction is necessary, it must be concluded that the classification created by the statute can be considered neither as rational nor reasonable and therefore in violation of constitutional principles. Furthermore, constitutional principles of both equal protection and due process demand that the means selected for the fulfillment of legislature purpose bear a relation to that end.
The judge found "no basis for distinguishing between the installation of pipe between public streets and private buildings and the installation of pipe under public streets. The type of work and tools involved are identical on either side of the property line and the general and utility laborers [intervenors] have been doing this work safely for many years." In finding that the statute was unconstitutional, the judge concluded:
On balance, the minimal benefits, if any, offered by the statute, the effect it would have on thousands of laborers, and the fact that a classification is created which fails to serve any perceived or real public need, all lead to the conclusion that the statute violates equal protection and is therefore unconstitutional. Furthermore, the preclusion of laborers from performing site installation bears no relation to the legislative purpose of creating a statewide licensing mechanism, and in this regard, the statute not only violates equal protection, but due process as well.
By virtue of a subsequent letter, it is clear that the judge "invalidated N.J.S.A. 45:14C-2(g) in its entirety and not just with respect to site work."
*494 Plaintiffs argue that licensing is part of "accepted police power" and that the issue before us is only whether "any set of facts known to the legislative body or which could reasonably be assumed to have been known ... would rationally support a conclusion that the enactment is in the public interest," and that there is a "rational basis for the distinction" among classifications. See generally, e.g., U.S.A. Chamber of Commerce v. State, 89 N.J. 131, 159, 445 A.2d 353 (1982); Hutton Pk. Gardens v. West Orange Town Council, 68 N.J. 543, 565, 350 A.2d 1 (1975). They contend the licensing requirement reflects competency for the benefit of the consumer, and that distinction with respect to the type of "consumers" impacts on the distinction between "on-site" and "off-site" licensure.
Defendants Heavy & General Laborers Local Unions claim that the statute should be construed as not requiring licensure to apply to laborers employed by unlicensed general contractors, and intervenor Utility and Transportation Contractors Association believes that the word "plumbing" should be interpreted to permit "site" plumbing work to be done by contractors utilizing construction laborers without the supervision of licensed plumbers. They contend that the issue before us should be resolved by a restrictive interpretation of the definition of the word "plumbing" because, consistent with history, work on "piping" systems is "plumbing," but the installation and removal of utility pipes and lines to and from a structure is not. Their approach is supported by notions of appropriate jurisprudence favoring statutory interpretation, where possible, to avoid a declaration of unconstitutionality.
Plaintiffs also contend that the "[t]rial court erred in failing to address and condemn the Attorney General's unlawful conduct" in issuing an opinion letter holding the statute unconstitutional. Plaintiffs press their contention, claiming that their argument is not moot even if the trial court was correct in declaring section 2(g) unconstitutional. Plaintiffs assume that the obligation to "enforce the law" means that the Attorney General must enforce whatever any statute provides, at least *495 until he commences or institutes "proceedings for a judicial determination of the statute's constitutionality." They maintain that without commencing a judicial proceeding, the Attorney General made himself the ultimate judge of constitutional issues, in violation of the separation of powers doctrine. Plaintiffs complain that they had to "incur the substantial expense of prosecuting this litigation" because the Attorney General did not enforce the law, and want their "application for fees" to be decided.

II.
We start our analysis with the well settled principle of statutory construction that "a challenged statute will be construed to avoid constitutional defects" if the statute is "`reasonably susceptible' of such construction." N.J. Bd. of Higher Ed. v. Shelton College, 90 N.J. 470, 478, 448 A.2d 988 (1982). Furthermore, constitutional challenges to legislation "will not be resolved unless absolutely imperative in the disposition of the litigation." Ahto v. Weaver, 39 N.J. 418, 428, 189 A.2d 27 (1963). As judges we have the "obligation not to invalidate [a statute] on constitutional grounds if it could be interpreted in a manner that would be consistent with constitutional principles...." African Council v. Hadge, 255 N.J. Super. 4, 10, 604 A.2d 604 (App.Div. 1992). See also State v. Dillihay, 127 N.J. 42, 54, 601 A.2d 1149 (1992) (interpreting N.J.S.A. 2C:35-5 and 35-7 to prevent double jeopardy consequences). Further, "[w]ell-established principles of statutory construction direct us to look first to the statute's plain language to derive its meaning, absent any specific indication of legislative intent to the contrary." Town of Morristown v. Woman's Club, 124 N.J. 605, 610, 592 A.2d 216 (1991). Thus, "we resort to that overriding principle of statutory construction that in the absence of an explicit indication of special meaning, words will be given their ordinary and well-understood meaning." Service Armament Co. v. Hyland, 70 N.J. 550, 556, 362 A.2d 13 (1976).
*496 The generally accepted meaning of the words "plumber" and "plumbing" is readily accessible from the dictionary. In Webster's Ninth New Collegiate Dictionary (Merriam Webster, Inc. 1985), the terms are defined as follows:

plumber: ... one who installs, repairs, and maintains piping, fittings, and fixtures involved in the distribution and use of water in a building. (emphasis added)

plumbing: ... a plumber's occupation or trade . .. the apparatus (as pipes and fixtures) concerned in the distribution and use of water in a building. (emphasis added)
Accord, Webster's Third New International Dictionary (Merriam Webster, Inc. 1986); Oxford American Dictionary (Oxford University Press, Inc. 1980). These definitions clearly set forth meanings which confine the role of a plumber and his or her work to inside a building or structure.
Even more significant with respect to the legislation regarding "master plumbers" and "plumbing" is the definition of "plumbing" as embodied in the National Standard Plumbing Code (1990) of the National Association of Plumbing-Heating-Cooling Contractors which has been adopted by the Commissioner of Community Affairs "as the plumbing subcode for New Jersey." N.J.A.C. 5:23-3.15(a)(1). The Code was adopted "[t]o provide practices and performance criteria for the protection of health and safety through proper design and plumbing systems." The Code's definition of "plumbing" includes the following:

PLUMBING
The practice, materials and fixtures used in the installation, maintenance, extension, alteration and removal of all piping, plumbing fixtures, plumbing appliances, and plumbing appurtenances in connection with any of the following: Sanitary drainage, storm facilities, venting systems, public or private water supply systems, within or adjacent to any building. ... (emphasis added)
*497 Clearly the traditional definitions of "plumbing" limit the functions of plumbers to professional responsibilities within buildings and structures or just outside or adjacent thereto, as opposed to the property line or beyond.[3] Indeed, the Code's definition reasonably comports with our common understanding that plumbers, at times, perform work outside of the confines of the building in a way that is ancillary to their primary and traditional work which is performed within the building.
The statement of the Assembly Higher Education and Regulated Professions Committee which reported favorably, with amendments, the bill (A3842) which became the 1988 act, stated its purposes:
As amended by committee, this bill revises existing law to require that any person who engages in the business of plumbing contracting must be either (1) a licensed master plumber, or (2) a corporation, partnership, firm, or other legal entity in which a licensed master plumber holds 10% of the outstanding shares of stock.
The bill also provides that as of its effective date, a municipality, local board of health or other agency shall no longer be able to issue any plumber's license. Currently, an individual may be licensed as a master plumber by the State Board of Examiners of Master Plumbers, in which case he may practice plumbing throughout the State, or he can be licensed by a municipality to *498 perform plumbing work within that municipality. Current law also allows local boards of health to promulgate rules and regulations in regard to the practice of plumbing and to issue licenses authorizing its practice. This bill repeals those sections of law which currently authorize a municipality, local board of health or any agency other than the State Board of Examiners of Master Plumbers, to regulate and license plumbers. The bill does, however, provide that any person who has held a plumber's license issued by a municipality, local board of health or other agency for five years prior to the act's effective date, shall be licensed by the State board as a master plumber without examination.
The definitions in the 1988 act, therefore, were a part of the Legislature's comprehensive endeavor to provide uniformity in the licensing and regulation of plumbers. There is no legislative history which reveals why the Legislature used the definition of "plumbing" it embodied in N.J.S.A. 45:14C-2(g). Whatever its reason, however, there can be no question that giving plumbers exclusive jurisdiction with respect to installation of piping and plumbing materials from buildings and structures to the "final connection to an approved point of disposal" and water supply systems from a building or structure "to their final connection to an approved supply system" expands both the traditional definition of "plumbing" and the traditional role of the "plumber" at the expense of others who heretofore performed such work between buildings and property lines, and beyond, without adverse consequences.
It is essentially undisputed that the 1988 act would result in the job disenfranchisement of a labor force that has historically performed water and sewer connections outside of buildings and structures. Significantly, plaintiffs cannot demonstrate any actual danger to the public welfare caused by these contractors or their workers, and cannot point to any danger made known to the Legislature. They do not now claim otherwise, and this is so notwithstanding that contractors and their laborers have performed water and sewer line connections in this State for many years without incident. Further, there is no contest that they have done so competently, and can continue to do so, beyond the property line. We, therefore, affirm the judgment declaring N.J.S.A. 45:14C-2(g) unconstitutional, substantially for the reasons stated by Judge Frederick C. Kentz, *499 Jr. in his opinion of October 24, 1990. See e.g. White v. City of Evansville, Indiana, 310 F. Supp. 569, 570 (S.D.Ind. 1970) (holding unconstitutional an ordinance which permitted only licensed plumbers to lay sewer pipes to "buildings or structures on private real estate," but which required no such license to lay sewer pipe on public property); cf. Greenberg v. Kimmelman, 99 N.J. 552, 570, 494 A.2d 294 (1985) ("right to employment opportunity"). See also Utility Contractors Ass'n of New Jersey, Inc. v. Toops, 507 F.2d 83 (3d Cir.1974).
In holding N.J.S.A. 45:14C-2(g) unconstitutional we do no more than invalidate the definitional term of the statute to the extent that it expands the exclusive jurisdiction of plumbers beyond a building or structure and thus deprives contractors and laborers of their prior employment opportunities. In thus declaring the statute unconstitutional, we do not otherwise invalidate the licensing requirements with respect to work performed inside a building or structure and ancillary thereto. Accordingly, we conclude that the Attorney General was correct in advising the Department of Community Affairs and the State Board of Examiners of Master Plumbers that "a license issued by the Board [is] not ... legally required to perform the work of installing piping and the necessary fixtures for providing water, sewer and drainage systems between a structure and the property line for the parcel on which the structure is located."

III.
The Attorney General, among other things, is legal advisor to and represents the State and its officers. See N.J. Const. (1947) Art. 5, § 4, ¶ 3; N.J.S.A. 52:17A-3, -4(b), (e). As such, he is "sole legal advisor" to the departments and "instrumentalities of the State." N.J.S.A. 52:17A-4(e). It may be unusual for the Attorney General to conclude that a statute is unconstitutional, but when a State agency asks for advice he must give it, and his obligation to "enforce" the law includes the statutory law to the extent that it is constitutional. This is *500 so because the Attorney General has an obligation to "[e]nforce the provisions of the Constitution" which is the fundamental or organic law. See N.J.S.A. 52:17A-4(h). The fact that the Judiciary, under our doctrine of separation of powers, is the Branch which must ultimately decide a constitutional issue and is the final arbiter of constitutional disputes, does not mean that the Attorney General either can never interpret a statute as unconstitutional or must always commence a declaratory judgment action if he concludes that it is. Cf. General Assembly of State of New Jersey v. Byrne, 90 N.J. 376, 380, 448 A.2d 438 (1982).
We have no basis for deciding that the Attorney General, as counsel for State agencies, could not issue an opinion letter concluding that there was no constitutionally discernible difference between pipe laying done off-site and on-site, for concluding that the statute was unconstitutional, or for relying on that opinion without taking judicial action. Further, there is no authority for the award of counsel fees even to a "prevailing party" in these circumstances. R. 4:42-9. We therefore reject plaintiffs' claim that, irrespective of outcome, it is entitled to counsel fees.
The judgment is affirmed.
NOTES
[1] "The State Plumbing License Law of 1968" was originally adopted by L. 1968, c. 362, effective December 26, 1968. See N.J.S.A. 45:14C-1 et seq. The terms "master plumber" and "bona fide" representative were defined in N.J.S.A. 45:14C-2 but were amended by L. 1987, c. 442, § 1 when other definitions were added.
[2] A "master plumber" is a person licensed pursuant to the 1988 act "who has the qualifications, training, experience and technical knowledge necessary to properly plan, lay out, install or repair plumbing apparatus and equipment and to supervise others in the performance of such work in accordance with standards, rules and regulations established by" the State Board of Master Plumbers. See N.J.S.A. 45:14C-2(a).
[3] When the statute refers to "piping, plumbing fixtures, plumbing appliances, and plumbing appurtenances" we are reminded of our traditional understanding of the plumbing profession, and under the National Standard Plumbing Code, supra, a "plumbing fixture" includes

[a] receptacle or device which is either permanently or temporarily connected to the water distribution system of the premises, and demands a supply of water therefrom, or it discharges used water, liquid-borne waste materials, or sewage either directly or indirectly to the drainage system of the premises, or which requires both a water supply connection and a discharge to the drainage system of the premises. (emphasis added)
Further, a "plumbing appliance" involves a "plumbing fixture ... intended to perform a special plumbing function" whose "operation and/or control may be dependent upon one or more energized components, such as motors, controls, heating elements, or pressure or temperature-sensing elements." Code at 1-12. Finally, as one certification in the record notes, the installation of underground utility lines requires excavating equipment and large diameter pipe not traditionally associated with the plumber's trade, and "plumbing" contemplates "work on piping systems within or adjacent to buildings and structures...."