712 P.2d 21

DEER MESA CORPORATION, a New Mexico Corporation, Plaintiff-Appellee,

v.

LOS TRES VALLES SPECIAL ZONING DISTRICT COMMISSION and Board of County Commissioners of Taos County,

Los Tres Valles Special Zoning District Commission, Defendant-Appellant.

No. 8024.

Court of Appeals of New Mexico.

Dec. 5, 1985.

K. Lee Peifer, Freedman, Boyd & Daniels, P.A., Albuquerque, Peggy J. Nelson, Taos, for defendant-appellant.

Susan Ross, Natelson & Ross, Taos, Steven Barshov, Potter, Kelly & Barshov, Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

This appeal involves the Special Zoning District Act (the Act), NMSA 1978, Sections 3–21–15 to –26 (Repl.1985). Deer Mesa Corporation (Deer Mesa) sued Los Tres Valles Special Zoning District Commission (District) and the Board of County Commissioners of Taos County (County). The complaint stated alternative and different theories of relief, NMSA 1978, Civ.P.Rule 8(a) (Repl.Pamp.1980), including a request for declaratory judgment.[1] The trial court

ruled that the Act was "unconstitutional on its face in that it unconstitutionally delegates power to private persons and allows arbitrary exercise of power by individuals." The County did not appeal; the appellant is the District. We discuss: (1) procedural matters, and (2) unconstitutional delegation.

## PROCEDURAL MATTERS

There are three procedural matters. The District contends the trial court should not have decided the constitutional question. Deer Mesa contends this court should not decide this appeal. Deer Mesa contends the Act is unconstitutional on two additional grounds.

### (a) The trial court's constitutional ruling.

█ The trial court held a hearing to consider a variety of pending motions. One motion was Deer Mesa's motion for summary judgment which alleged the Act was facially unconstitutional. The trial court granted this motion. The ruling did not involve any factual matters; only a legal question was involved. *See generally, Westgate Families v. County Clerk of Incorporated County of Los Alamos*, 100 N.M. 146, 667 P.2d 453 (1983).

The District's contention is that other issues should have been decided prior to the constitutional question. This claim was made at the motions hearing, and requires identification of the showing of undisputed facts before the trial court at the time it granted the summary judgment.

The facts before the trial court, not controverted at the time of the summary judgment ruling, *see* NMSA 1978, Civ.P.Rule 56(d) (Repl.Pamp.1980), are found in various documents. The documents are: 1) facts stated in the verified complaint on the basis of personal knowledge of the affiant, the president of Deer Mesa, *see Martinez v. Metzgar*, 97 N.M. 173, 637 P.2d 1228 (1981); *Rekart v. Safeway Stores, Inc.*, 81

---

1. The parties agree that the Attorney General was served but did not appear. *See* NMSA 1978, § 44–6–12.

N.M. 491, 468 P.2d 892 (Ct.App.1970); 2) the District's admissions in its answer to Deer Mesa's complaint, *see Lujan v. Gonzales*, 84 N.M. 229, 501 P.2d 673 (Ct.App. 1972); 3) the written stipulation of Deer Mesa and the County; and 4) the exhibits admitted at the motions hearing without objection.

The facts were:

(1) On August 12, 1982, a petition and a map were filed with the Taos County Clerk, which, if legally sufficient, created the District. *See* § 3–21–18.

(2) An election for special zoning district commissioners was held on November 9, 1982, and commissioners were elected. The election was held eighty-nine days after creation of the District, thus, not within the sixty-day period provided by Section 3–21–20.

(3) Deer Mesa applied to Taos County for preliminary plat approval of the Deer Mesa Subdivision on April 29, 1983. The application pertained to ninety-one acres owned by Deer Mesa.

(4) On June 10, 1983, the district commissioners adopted an ordinance which, if enacted in a legally sufficient manner, took effect on July 8, 1983. The ordinance contains a comprehensive land use plan and regulations. The filing stamp on the ordinance indicates it was filed with the county clerk on May 20, 1983, apparently three weeks prior to its adoption, but no issue is raised as to this in this appeal. Accordingly, we have not reviewed the statutes incorporated by reference in Section 3–21–22.

(5) The Taos County Planning Commission approved Deer Mesa's subdivision application and preliminary plat on September 15, 1983.

(6) The proposed Deer Mesa Subdivision is in compliance with applicable state and county subdivision laws and regulations.

(7) The District contains approximately 50,000 acres, and Deer Mesa's ninety-one acres are included within the District.

(8) The proposed Deer Mesa Subdivision does not comply with the District's ordinance as to lot sizes and the maximum number of lots in a subdivision. The proposed subdivision was not a "grandfathered" existing use under the ordinance. The proposed subdivision has not been approved by the District as a planned unit development under the ordinance.

(9) The County "will not grant a final plat approval on the proposed Deer Mesa Subdivision unless the proposed subdivision complies with the Ordinance and any other applicable laws of the District."

Deer Mesa's complaint in this suit stated three theories for relief. Count I challenged the constitutionality of the Act on various factual and legal grounds, including the claim that the Act was facially unconstitutional. Count II challenged the validity of the ordinance on constitutional grounds, on statutory grounds and on the facts. Count III asserted that Deer Mesa's proposed subdivision was not subject to the District's ordinance because of all of its preliminary work on the subdivision, including a drainage and flood hazard study, a soils report, a master plan, a water futures study, and the drilling of a test well. Deer Mesa alleged that this preliminary work occurred in 1982 and was included in its application, filed and pending, before the District's ordinance was adopted.

Deer Mesa filed a separate suit in *quo warranto* challenging the formation of the District under the Act. The *quo warranto* suit was not consolidated with this suit, nor was the trial court asked to do so. Nothing indicates that any hearing has been held in the *quo warranto* suit or the status of that suit. The District, however, includes the *quo warranto* suit in its procedural argument.

The District contends there is a pecking order for deciding the issues in this case. In the trial court, it asserted that the *quo warranto* suit, which raised the issue of whether the District was properly formed, must be decided first. If properly formed, the District claimed the second issue was that raised in Count III, which asserted that the proposed subdivision was not subject to the District's ordinance. If the pro-

posed subdivision was subject to the ordinance, only then could constitutional questions be decided. In the trial court, the District did not suggest which of the numerous constitutional issues could be decided first if constitutional questions were to be decided. The District's brief suggests that all factual predicates for all constitutional issues would have to be decided before there could be a ruling on any constitutional issue as a matter of law. The District asserts the trial court was "required * * * to decide determinative nonconstitutional issues * * * before reaching the constitutional issues."

The trial court rejected the argument that it was required to decide all nonconstitutional issues before considering whether the Act was constitutional as "contrary to the doctrine of judicial economy * * *." The trial court's meaning of judicial economy is illustrated by its comment that if the Act was unconstitutional there would be no need for a trial. The District asserts that economical and efficient use of a judge's time must yield to the rule "reserving constitutional determinations until all determinative non-constitutional issues have been resolved."

The District's briefs ignore *Montoya v. Blackhurst*, 84 N.M. 91, 500 P.2d 176 (1972). In *Montoya* the trial court declared a statute unconstitutional. In affirming the trial court, the supreme court stated: "When the issue has been placed before the court, the decision as to the constitutionality of a statute is generally within the judicial discretion of the judge." The issue was before the trial court in this case; Deer Mesa sought a declaratory judgment that the Act was unconstitutional on its face. The trial court's ruling disposed of this litigation at the trial level, and made unnecessary a trial of the numerous factual issues. There was no abuse of discretion by the trial court.

The District, contrary to *Montoya*, contends the trial court lacked discretion to make the constitutional ruling. It states: "It is well settled in this jurisdiction that if an actual controversy between parties can be otherwise fairly decided and disposed of, the court will refrain from deciding constitutional issues." The District cites *State ex rel. Huning v. Los Chavez Zoning Commission*, 97 N.M. 472, 641 P.2d 503 (1982), in support of its contention, asserting that *Huning* "is virtually identical * * *." We disagree.

In *Huning* there was an appeal after a trial on the merits. The supreme court reviewed the evidence and decided the case on that basis, stating: "We do not reach the constitutional issue raised in this case as this Court will not rule upon a constitutional question if the merits of the case may otherwise be fairly decided." This states a rule for deciding appeals. *Property Tax Department v. Molycorp, Inc.*, 89 N.M. 603, 555 P.2d 903 (1976), pointed out that appellate courts have "a duty to avoid a constitutional adjudication where a ruling on another issue would terminate the controversy." *Molycorp* also pointed out that the determinative nonconstitutional issue must be met if there is a record on which the decision can be based. *Huning* does not address the trial court's discretion in deciding a constitutional issue. There is no record in this case permitting an appellate disposition on the merits on the basis of nonconstitutional issues.

The District asserts that the rule requiring appellate courts to avoid unnecessary constitutional adjudication also applies to trial courts. The District cites *Tung Chi Jen v. Immigration & Naturalization Service*, 566 F.2d 1095 (9th Cir.1977). That case does state that, in the federal system, the rule applies to courts and administrative agencies because unnecessary constitutional adjudication frustrates the rule of restraint and sound judicial administration. We have not reviewed the federal cases to determine how such a rule has been applied. There is no reason to do so in this appeal. *Montoya* states that a trial court has discretion to decide a constitutional issue that is before the trial court for decision. We must follow *Montoya*. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

Quite apart from *Montoya*, the District's contention is contrary to the authorized remedy of summary judgment in Civ.P. Rule 56. That remedy exists to avoid unnecessary trials, *see DeVargas Savings & Loan Association of Santa Fe v. Campbell*, 87 N.M. 469, 535 P.2d 1320 (1975), and to expedite litigation, *see Goffe v. Pharmaseal Laboratories, Inc.*, 90 N.M. 764, 568 P.2d 600 (Ct.App.1976), *rev'd on other grounds*, 90 N.M. 753, 568 P.2d 589 (1977). Under the District's contention, the constitutional issue could not be decided by summary judgment until the nonconstitutional issues had been decided. However, Civ.P. Rule 56 authorizes a summary judgment if a party is entitled to summary judgment as a matter of law. *Westgate Families*. Civil Procedure Rule 56 does not postpone a summary judgment on constitutional issues until nonconstitutional issues have been decided.

Even if the trial court *could* decide the constitutional question in a summary judgment proceeding, the District contends it *should* not have done so in this case because "the challenged enactment is not even clearly applicable." It refers us to *State v. Hines*, 78 N.M. 471, 432 P.2d 827 (1967), which states that "[t]he constitutionality of a legislative act is open to attack only by a person whose rights are affected thereby." The District asserts that Deer Mesa is not affected until it is determined that the District exists. This argument amounts to semantic aphasia. The District exists; the petition and map have been filed, commissioners have been elected, an ordinance has been adopted. Deer Mesa's rights have been affected by the District. The County has refused to give final plat approval until the proposed subdivision complies with the District's ordinance. The trial court ruled that the District "is invalid, null and void, now and from its inception" because the Act was unconstitutional on its face. The trial court was not required to postpone a decision on that issue until nonconstitutional issues were decided.

The District also argues that a policy of not deciding constitutional issues should be applied in this case. It asserts that Deer Mesa could win its lawsuit on several nonconstitutional issues. The converse is that Deer Mesa could lose on all nonconstitutional issues with the result that a constitutional ruling would be eventually required. Inasmuch as the trial court had discretion to rule on the constitutional issue and could properly make that ruling in a summary judgment proceeding, policy considerations do not require that the constitutional ruling be deferred until nonconstitutional issues have been decided.

We decline to vacate the summary judgment and require the trial court to try all nonconstitutional issues before this court reviews the constitutional decision on appeal.

**(b) Whether this court should decide this appeal.**

NMSA 1978, Section 34–5–14(C) (Repl. Pamp.1981) states:

C. The supreme court has appellate jurisdiction in matters appealed to the court of appeals, but undecided by that court, if the court of appeals certifies to the supreme court that the matter involves:

(1) a significant question of law under the constitution of New Mexico or the United States; or

(2) an issue of substantial public interest that should be determined by the supreme court.

Any certification by the court of appeals under this subsection is a final determination of appellate jurisdiction.

■ Deer Mesa filed its answer brief on January 8, 1985; briefing was complete with the filing of the reply brief on January 21, 1985. On October 11, 1985, Deer Mesa moved that this court certify this appeal to the supreme court under Section 34–5–14(C). At that time, a panel of this court had been assigned to decide the appeal, and this court's clerk was in the process of giving notice to counsel that the appeal had been set for oral argument on the merits of the appeal. The following

notation was entered on Deer Mesa's motion: "10/11/85—Panel agrees this motion to be held in abeyance until after oral argument." Deer Mesa then moved for oral argument on the motion to certify. *See* NMSA 1978, Civ.App.R. 18(d) and (e) (Repl. Pamp.1984). The notation on this motion reads: "You can say what you want to on this at the oral argument scheduled Nov. 13, 1985."

The motion for certification argues that the trial court's constitutional ruling involves a significant question of law under the federal and state constitutions and an issue of substantial public interest that should be determined by the supreme court. This view of the constitutional question was asserted in the trial court, and in the briefs filed in this court, as a reason why the trial court properly decided the constitutional question before deciding non-constitutional issues. *Cf. State ex rel. Gomez v. Campbell*, 75 N.M. 86, 400 P.2d 956 (1965). It was not necessary to classify the constitutional question as "significant" or "substantial" in deciding whether the trial court could properly decide the constitutional question at the summary judgment hearing, nor is it necessary in ruling on the motion to certify. We assume, but do not decide, that the constitutional question is significant and substantial.

█ Section 34–5–14(C) authorizes certification of matters "undecided" by the court of appeals. This is not a case where the assigned panel, *see* NMSA 1978, Section 34–5–11 (Repl.Pamp.1981), lacked authority to decide an issue. *See State v. Carter*, 87 N.M. 41, 528 P.2d 1281 (Ct.App. 1974). Nor is it a case where the panel was unable to decide. *See State v. Tijerina*, 84 N.M. 432, 504 P.2d 642 (Ct.App.1972). Nor is it a case where the panel felt it should not decide an issue because the issue was before the supreme court in other cases. *See State v. Puga*, 84 N.M. 756, 508 P.2d 26 (Ct.App.1973), 85 N.M. 204, 510 P.2d 1075 (Ct.App.1973).

Deer Mesa asserts this case "should" be certified because briefing was completed in January 1985, and this court had not decided the appeal by October 1985. Thus, Deer Mesa contends it is entitled to certification because of delay by this court in deciding the appeal. This ignores the reason for the delay. The delay in this case occurred because of the number of cases involving a subject matter to which this court accords priority—crime, children, and worker's compensation. Primary consideration has been given to the priority cases during the delay period in this case. Our point is that delay by this court in deciding this case, without more, is an insufficient ground for certification.

What if there had been no delay? Deer Mesa's motion is directed solely to the merits of the constitutional question. The motion fails to consider the procedural issue of whether the trial court should have decided the constitutional question. If the constitutional question should not have been decided, the merits of the constitutional question would not be reached in the appeal. Deer Mesa does not contend that the procedural question merited certification. If the case had been certified, a remand could have been expected because of the procedural issue. This court cannot foist issues on the supreme court. *See* NMSA 1978, Civ.App.R. 29 (Repl.Pamp. 1984); *cf. State v. Puga.*

The motion for certification is denied.

**(c) Two additional constitutional issues.**

█ Deer Mesa asserts the trial court should be affirmed because the Act is unconstitutional for two other reasons. Neither of these two additional constitutional grounds were decided by the trial court and are not before us for review. NMSA 1978, Civ.App.R. 11 (Repl.Pamp.1984); *Adoption of Doe*, 89 N.M. 606, 555 P.2d 906 (Ct.App. 1976).

**UNCONSTITUTIONAL DELEGATION**

█ The trial court ruled that the Act was an unconstitutional delegation of power to individuals. What power is involved—the legislative, executive or judi-

cial? *See* N.M. Const. art. III, § 1. *See State v. Spears*, 57 N.M. 400, 259 P.2d 356 (1953).

The Act provides for the "creation" of the district, Section 3–21–18; provides for the election of commissioners for the district, Section 3–21–19 and –20; and confers upon the commissioners the power to zone within the district, Section 3–21–21 and –22. The zoning power is involved.

*Coe v. City of Albuquerque*, 76 N.M. 771, 418 P.2d 545 (1966), held that the zoning power was not a judicial power. Since *Coe*, it has been expressly stated that the power to zone "must come from enabling legislation," *Westgate Families*, and the "power to zone * * * must be delegated * * * by state statute." *City of Santa Fe v. Armijo*, 96 N.M. 663, 634 P.2d 685 (1981). *See also Burroughs v. Board of County Commissioners, County of Bernalillo*, 88 N.M. 303, 540 P.2d 233 (1975). The question of the boundaries of a district in which the zoning power is exercised "must be determined by the Legislature or some body having legislative or administrative powers to which their determination is delegated." *See Searle v. Yensen*, 118 Neb. 835, 226 N.W. 464 (1929). *Cf. Cox v. City of Albuquerque*, 53 N.M. 334, 207 P.2d 1017 (1949). The power involved is the legislative power. Thus, the trial court's ruling was that the Act was an unconstitutional delegation of legislative power to individuals.

The issue of unconstitutional delegation goes to the formation of the District. Issues involving the election of commissioners, the adoption of the zoning ordinance and the contents of the ordinance were not decided by the trial court and are not involved in this appeal.

The issue as to the formation of the District, in this appeal, is a limited issue involving Section 3–21–18. That section reads:

A special zoning district is created in an area outside the boundary limits of an incorporated municipality when:

A. there are at least one hundred fifty single-family dwellings within the area;

B. at least fifty-one percent of the registered electors residing in the area sign a petition requesting a special zoning district;

C. the signed petition, along with a plat of the area included within the district, is filed in the office of the county clerk of the county or counties in which the area is situate; and

D. no general zoning ordinance applying to all areas in the county outside of incorporated municipalities has been adopted by the county or counties in which the area is situate; provided that any special zoning district in existence upon the effective date of this act may continue to exist without cost to any county, and any special zoning district created pursuant to this section may continue to exist after adoption of a general zoning ordinance applying to all areas in the county outside of incorporated municipalities by the county or counties in which the district is situate without cost to any county; but no new special zoning districts shall be created in any county after the adoption of such general zoning ordinance by such county.

The issue as to the formation of the District does not involve the method for determining whether the requirements of Section 3–21–18 have been met. *See Huning*. Section 3–21–18 identifies requirements for "creation" to occur. The issue as to the formation of the District does not involve the requirements stated in the statute. Whether the requirements stated in Section 3–21–18 had been met was not decided by the trial court; compliance with these requirements is not an issue in this appeal.

The issue as to the formation of the District goes to what is not stated in Section 3–21–18. This issue involves the location and size of the District. Section 3–21–18 provides the following limitations on location and size: the district must be outside the boundary limits of an incorporated

municipality, there must be 150 single-family dwellings within the area of the proposed district, fifty-one percent of the registered electors within the area of the proposed district must sign a petition requesting a district, there must be no general zoning ordinance applicable to the area of the proposed district and the district is not limited to one county.

■ The legislature has specified requirements for the creation of a district and review of the fulfillment of those requirements is available through *quo warranto*. On this basis, the District asserts there is no unlawful delegation of legislative power. Implicit in the District's position is the view that the sufficiency of the legislative requirements is not a matter for review by a court. Deer Mesa contends the sufficiency of the legislative requirements is necessarily involved because the question of unlawful delegation involves limitations upon the legislative power delegated. We agree with Deer Mesa.

■ *State v. Spears* pointed out that the question of unlawful delegation of legislative power involves the question of whether actions authorized by a statute are within defined limits. *State ex rel. Holmes v. State Board of Finance*, 69 N.M. 430, 367 P.2d 925 (1961), pointed out that the propriety of a delegation of legislative power involves the sufficiency of the standards by which the delegation is to be exercised. *City of Santa Fe v. Gamble-Skogmo, Inc.*, 73 N.M. 410, 389 P.2d 13 (1964), states:

> It is settled that a legislative body may not vest unbridled or arbitrary power in an administrative agency but must furnish a reasonably adequate standard to guide it. * * * Standards required to support a delegation of power by the local legislative body need not be specific. Most decisions hold that broad general standards are permissible "so long as they are capable of reasonable application and are sufficient to limit and define the Board's discretionary powers."

(Citations omitted.) The authority delegated must be restricted by specific legislative standards. *Montoya v. O'Toole*, 94 N.M. 303, 610 P.2d 190 (1980).

*Spears, State Board of Finance, Gamble-Skogmo, Inc.* and *O'Toole* involved the delegation of legislative power to administrative agencies or local public bodies. The requirements for a proper delegation apply to private persons as well as governmental bodies. *See Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928), which involved a zoning ordinance giving control of use of land as a home for old people to property owners within 400 feet of the proposed building. The authority given to the property owners was "uncontrolled by any standard or rule prescribed by legislative action * * *. They are * * * free to withhold consent for selfish reasons or arbitrarily * * *." *Id.* at 122, 49 S.Ct. at 52.

NMSA 1978, Sections 3–21–1 and –2 (Repl.1985) authorize zoning within the jurisdiction of municipalities and counties within specified territorial limits. The Junior College Act considered in *Daniels v. Watson*, 75 N.M. 661, 410 P.2d 193 (1966), provided territorial limits. In contrast, Section 3–21–18 identifies territory that may not be included in the district but provides no limitation on the amount of territory or the location of territory which may be included.

Under Section 3–21–18, a district could consist of strips of land adjoining the Animas River in northern San Juan County, the Brazos River in northern Rio Arriba County, the Mora River in Mora County and the Gallinas River in San Miguel County. Such a district could affect access to fishing in northern New Mexico's most productive streams. Similarly, the salt lakes in Catron, Torrance and Roosevelt Counties could be included in one district, and the ranchers' access to the salt lakes could be affected. Land adjacent to Indian reservations, national and state parks, monuments and wildlife refuges could similarly be included in one district without regard to contiguity. Widely separate historic places—Puerto De Luna in Guadalupe County, Cimarron in Colfax County, Abi-

quiu in Rio Arriba County, Ramah in McKinley County, San Antonio in Socorro County, Folsom in Union County, Hillsboro in Sierra County—could be included in one district. The possibilities, and potential abuses, are constrained only by one's imagination.

That the District in this case is within Taos County does not matter. "It is not what has been done but what can be done under a statute that determines its constitutionality." *State ex rel. Holmes v. State Board of Finance; State v. Spears.*

Section 3–21–18 permits private individuals to "create" a special zoning district without any limitation on the size and location of the district. Section 3–21–18 is void as an unconstitutional delegation of legislative power. There is no standard to guide the private individuals in determining the size or location. *Cf. State v. Jaramillo,* 83 N.M. 800, 498 P.2d 687 (Ct.App.1972).

The summary judgment is affirmed. No costs are awarded.

IT IS SO ORDERED.

MINZNER and GARCIA, JJ., concur.