849 P.2d 384

William R. and Marcia K. ESPANDER, Plaintiffs–Appellants,

v.

CITY OF ALBUQUERQUE, Defendant–Appellee.

No. 13007.

Court of Appeals of New Mexico.

March 4, 1993.

William G. Gilstrap, William G. Gilstrap P.C., Albuquerque, for plaintiffs-appellants.

David S. Campbell, City Atty., Alfred Quintana, Asst. City Atty., Albuquerque, for defendant-appellee.

## OPINION

HARTZ, Judge.

### I. BACKGROUND

Plaintiffs, William R. and Marcia K. Espander (the Espanders), appeal from a summary judgment granted by the district court in favor of Defendant, City of Albuquerque (City). The Espanders filed a complaint alleging property damage and personal injury caused by flooding onto their property and into their residence by water that came from a City arroyo. The City moved for summary judgment on the ground that it was immune from liability under the New Mexico Tort Claims Act, NMSA 1978, §§ 41–4–1 to –29 (Repl.Pamp.1989). The City predicated its motion on the complaint and an affidavit by Dan Hogan, a City supervisor who managed the hydrology division of the Albuquerque Public Works Department. His affidavit stated that "[t]he storm drainage system ... behind [the Espanders'] residence ... was a diversion channel for storm drainage [that had never] been designed or used for liquid waste and/or solid waste diversion or distribution [and was] not part of any water utility or solid or liquid waste connections or disposal system." Being bound by the authority of *City of Albuquerque v. Redding,* 93 N.M. 757, 605 P.2d 1156 (1980), we reverse.

### II. DISCUSSION

The Tort Claims Act provides that "[a] governmental entity and any public employee while acting within the scope of

duty are granted immunity from liability for any tort except as waived by Sections 41–4–5 through 41–4–12 NMSA 1978." Section 41–4–4(A). The Espanders claim that immunity is waived in the circumstances of this case by Section 41–4–8, which states:

A. The immunity granted pursuant to Subsection A of Section 4 of the Tort Claims Act does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of the following public utilities and services: gas; electricity; water; solid or liquid waste collection or disposal; heating; and ground transportation.

B. The liability imposed pursuant to Subsection A of this section shall not include liability for damages resulting from bodily injury, wrongful death or property damage:

(1) caused by a failure to provide an adequate supply of gas, water, electricity or services as described in Subsection A of this section; or

(2) arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

The City denies that immunity has been waived pursuant to Section 41–4–8(A) and argues that even if that subsection does waive immunity, immunity is reinstated by Subsection B and also by the second sentence of Section 41–4–6. Section 41–4–6 states in full:

The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings. Nothing in this section shall be construed as granting waiver of immunity for any damages arising out of the operation or maintenance of works used for diversion or storage of water.

We first discuss Section 41–4–6, then Section 41–4–8(B), and finally Section 41–4–8(A).

A. Applicability of Section 41–4–6.

■ Section 41–4–6 does not apply to this case. Section 41–4–6 waives immunity for causes of action relating to the operation or maintenance of "any building, public park, machinery, equipment or furnishings." The natural interpretation of the second sentence of that section is simply that it preserves immunity with respect to damages arising out of the operation and maintenance of works used for diversion or storage of water *in public parks and on the grounds of public buildings. See Castillo v. Santa Fe County*, 107 N.M. 204, 206, 755 P.2d 48, 50 (1988) (Section 41–4–6 applies to property surrounding a public building). For example, there would be immunity for liability arising from ponds and ditches in public parks. The immunity preserved by that sentence does not, however, extend to liability arising from the maintenance of diversion channels on public property in general. Although some language in decisions interpreting Section 41–4–6 may suggest that the section extends to all publicly owned premises, *see Bober v. New Mexico State Fair*, 111 N.M. 644, 652–53, 808 P.2d 614, 622–23 (1991) (State Fair liable for negligence in operation of coliseum's parking lot), no holding has gone so far. Because the City has not contended that the diversion channel by the Espanders' residence was on park land or on the grounds of a public building, we cannot say that the second sentence of Section 41–4–6 was intended to preserve immunity from liability in the circumstances of this case.

B. Applicability of Paragraph (B)(2) of Section 41–4–8.

■ The City contends that it was entitled to judgment because Paragraph (B)(2)

of Section 41–4–8 preserves immunity for liability for damages:

arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

We may assume that the language "discharge, dispersal, release or escape . . . into or upon land" is sufficiently broad to encompass flooding. The question is whether the substances listed in the paragraph include runoff water. We think not.

First, one could argue that runoff water is included in the word "liquids." Yet, the most reasonable construction of the paragraph is that "liquids" is modified by the word "toxic." In other words, the language "toxic chemicals, liquids or gases" is equivalent to "toxic chemicals, toxic liquids or toxic gases." Although one would expect the word "solids" rather than "chemicals" to be juxtaposed with "liquids" and "gases," it makes no sense to have inserted "or" rather than a comma between "liquids" and "gases" if *all* liquids and gases were to be included.

Second, one could argue that runoff water is "waste material." We have no doubt that the word "material" can include liquids. The question is whether runoff water is a "waste" material. "Waste" can mean "left over or superfluous." *See The Random House Dictionary of the English Language* 1611 (1971) (definitions 20 and 30 of "waste"). But in Paragraph (B)(2) the legislature used the word in a narrower sense. The statute speaks of "waste materials or other irritants, contaminants or pollutants." The language "or other" strongly implies that the only superfluous or unused material within the meaning of "waste" material is material that is an irritant, contaminant, or pollutant. Runoff water does not satisfy that requirement, at least if the words "irritant," "contaminant," and "pollutant" bear their common meanings. Our interpretation is buttressed by the observation that the language in Paragraph (B)(2) tracks the language of a

"pollution exclusion" clause widely used in insurance contracts. *See New Castle County v. Hartford Accident & Indem. Co.,* 970 F.2d 1267, 1271 (3d Cir.1992); *Aetna Casualty & Sur. Co. v. General Dynamics Corp.,* 968 F.2d 707, 709 (8th Cir. 1992). (The precise question presented here—whether runoff water is "waste material" within the meaning of the exclusion—is, however, unlikely to arise in the insurance context because the exclusion also contains the additional language: "but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.") We conclude that Paragraph (B)(2) of Section 41–4–8 does not help the City here.

C. The Meaning of Section 41–4–8(A) and *Redding.*

We now arrive at the issue that would ordinarily be the starting point of our discussion—whether Section 41–4–8(A) waives immunity for the liability alleged in this case. Our reason for taking the path we have is that our conclusions regarding Sections 41–4–6 and 41–4–8(B) inform our interpretation of Section 41–4–8(A).

The Espanders rely on the waiver of immunity in Section 41–4–8(A) for liability for damages arising from negligence "in the operation of the following public utilities and services: * * * liquid waste collection or disposal." Our prior analysis leads to the following observations.

■ First, if, as discussed above, the word "waste" as used in Section 41–4–8(B)(2) cannot be used to describe water runoff, then we would presume that the word "waste" as used in Section 41–4–8(A) also cannot be used to describe water runoff. Ordinarily, courts should interpret a word as having the same meaning throughout a statute, and certainly within the same section, particularly when the section was adopted as a whole at one time. *See Noriega v. Stahmann Farms,* 113 N.M. 441, 443, 827 P.2d 156, 158 (Ct.App.) ("maintenance" must have same meaning in both sentences of Section 41–4–6), *cert. denied,* 113 N.M. 449, 827 P.2d 837 (1992). This view is reinforced here by the observation that the

only statutory definition of "wastes" at the time of the enactment of Section 41–4–8 clearly did not include water runoff. The Water Quality Act defines "wastes" as "sewage, industrial wastes or any other liquid, gaseous or solid substance which will pollute any waters of the state[.]" NMSA 1978, § 74–6–2(C) (Repl.Pamp.1992). Thus, our analysis of Section 41–4–8(B)(2) raises a serious doubt that "liquid waste" in Section 41–4–8(A) was meant to encompass water runoff.

■ Pointing in the same direction is our understanding of Section 41–4–6. At first blush, Section 41–4–6 would seem irrelevant to the meaning of Section 41–4–8(A). Yet, we often look to the context created by an entire statute in order to interpret more accurately a particular section within the statute. The second sentence of Section 41–4–6 was enacted in 1977, one year after the enactment of Section 41–4–8 and the first sentence of Section 41–4–6. If the damages described in the second sentence of Section 41–4–6 are damages for which immunity from liability is waived by Section 41–4–8(A), then the legislature accomplished nothing by adding the sentence— any immunity preserved by the sentence is lost pursuant to Section 41–4–8(A). We should assume that when the legislature enacted the sentence, it was not acting irrationally. *See Southard v. Fox,* 113 N.M. 774, 776, 833 P.2d 251, 253 (Ct.App. 1992). As the Supreme Court has stated, it "construes each part of an act in connection with every other part so as to produce a harmonious whole." *Lopez v. Employment Sec. Div.,* 111 N.M. 104, 105, 802 P.2d 9, 10 (1990). Hence, we conclude that Section 41–4–8(A) does not waive immunity for the damages described in the second sentence of Section 41–4–6. Our interpretation of that sentence therefore can inform our interpretation of Section 41–4–8(A).

In our view, one purpose of amending Section 41–4–6 by adding the second sentence was to make clear that immunity was not being waived with respect to liability arising out of works for the diversion of water—such as drainage ditches—on the grounds of public buildings and in public parks. (We need not consider works for the "storage" of water.) Yet, one would expect all such diversion works to be part of a public system for the diversion of water runoff. The ditch in the park needs to lead somewhere. If that system is considered to be a public utility or service for liquid waste disposal, within the meaning of Section 41–4–8(A), then the damages described in the second sentence of Section 41–4–6 (at least with respect to "works used for diversion ... of water") are fully encompassed by the waiver of immunity in Section 41–4–8(A). Any diversion work immunized from liability by the second sentence of Section 41–4–6 would be subject to liability under Section 41–4–8. The inclusion of diversion works in the second sentence of Section 41–4–6 would be a legal nullity, a useless act by the legislature. One would then wonder why the law adding the second sentence to Section 41–4–6 did not add a similar provision to Section 41–4–8. The most reasonable explanation for this "oversight" is that the legislature that enacted the second sentence of Section 41–4–6 did not consider the system of works used for diversion of runoff water to constitute a public utility or service for "liquid waste disposal." Under that view no amendment to Section 41–4–8 would be necessary. In this regard, we note that our research has not found any authority (other than *Redding* ) for the proposition that the term "liquid waste disposal" includes diversion of runoff water. *See Mechanical Contractors Ass'n v. State,* 255 N.J.Super. 488, 605 A.2d 743, 745 (Ct.App. Div.1992) (definition of "plumbing" speaks of "storm water" and "liquid waste" in the alternative).

■ Nevertheless, we cannot disregard our Supreme Court's opinion in *Redding.* Redding was riding her bicycle on an Albuquerque street when her front tire slipped through a drain grate located in the road and she was thrown from her bicycle. The Court stated that "[a] sewer grate can serve no other primary purpose than to afford disposal of waste water, silt and debris from the roadbed of the street." *Redding,* 93 N.M. at 759, 605 P.2d at 1158. Thus, the City's immunity was waived by

the language in Section 41–4–8(A) that authorizes suits for liability for damages "caused by the negligence of public employees while acting within the scope of their duties in the operation of the following public utilities and services: ... *solid or liquid waste collection or disposal*[.]" *Id.* As we understand *Redding*, it held that water runoff is a form of "liquid waste" and that works for the collection and diversion of runoff water are part of a public utility or service. Although the Hogan affidavit submitted by the City states that the "storm drainage system ... behind [the Espanders'] residence [was not] designed or used for liquid waste ... diversion," the affidavit cannot change the meaning of statutory language. *Cf. Ledbetter v. Webb*, 103 N.M. 597, 602–03, 711 P.2d 874, 879–80 (1985) (appellate court not bound by trial court's erroneous conclusions of law). We conclude that Section 41–4–8(A) waives the City's immunity from liability for the damages alleged in this case.

Following *Redding*, we reverse and remand for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DONNELLY, J., concurs.

APODACA, J., specially concurring.

APODACA, Judge, specially concurring.

I concur in the majority's conclusion that under *City of Albuquerque v. Redding*, 93 N.M. 757, 605 P.2d 1156 (1980), the district court's grant of summary judgment was improper. I therefore agree in the majority's reversal of the district court's decision and in remanding for further proceedings. However, I disagree with portions of the majority's analysis and therefore specially concur.

The majority contends that there is a conflict between the statutory language and the holding of *Redding* because the word "waste" is used in both NMSA 1978, Section 41–4–8(A) and (B)(2) (Repl.Pamp.1989). In the majority's view, "waste" should mean the same thing in both subsections, and thus if "runoff water" is included within the meaning of "waste" in Subsection (A) (as held in *Redding*), it must also be included within the scope of Subsection (B)(2). However, the majority has independently determined that runoff water is not included within the scope of Subsection (B)(2). Based on these determinations and an analysis of the additions of various sentences to the statutes, the majority concludes that the legislature must not have intended water diversion works to constitute a public utility or service for "liquid waste disposal" within the meaning of Section 41–4–8(A), a conclusion that the majority has further determined is inconsistent with *Redding*. I disagree and believe that the "conflict" or inconsistency seen by the majority is fully reconcilable.

I agree with the majority that, under *Redding*, a system to dispose of storm runoff water is a public utility or service for the collection or disposal of solid or liquid waste within the meaning of Section 41–4–8(A). *Redding*, 93 N.M. at 759, 605 P.2d at 1158. Thus, immunity for injuries resulting from the negligent maintenance of such a system would be waived.

I do not see a conflict between Section 41–4–8(A), *Redding*'s holding, and Section 41–4–8(B)(2) because, reading that subsection as a whole, I believe it clearly refers only to pollutants. The phrase "or other irritants, contaminants or pollutants" indicates that the term "waste materials" is intended to encompass toxic substances. *Id.* As the majority notes, the language from the subsection is that of standard pollution-exclusion clauses in insurance contracts. *See New Castle County v. Hartford Accident & Indem. Co.*, 970 F.2d 1267, 1271 (3d Cir.1992). I thus agree with the majority's conclusion that storm runoff water is not included within the scope of Section 41–4–8(B)(2).

I believe that a more-reasonable interpretation of Section 41–4–8(B)(2) is that it refers to accidental discharges of waste materials that are toxic, and not to dispersals of nontoxic substances that occur as the result of the regular operation of a public service. *See New Castle*, 970 F.2d at 1271 (standard insurance clause states that

clause does not apply if the discharge is "sudden and accidental"). Additionally, I believe that this subsection was intended to allow for the operation of solid waste disposal sites and similar facilities. My analysis therefore "explains away" the conflict seen by the majority. Simply stated, Subsection (B)(2) is "boiler plate" language for toxic wastes, thus excluding runoff water; Subsection (A), on the other hand, does not encompass such language. Additionally, *Redding* clearly held that Subsection (A) includes runoff water. The scope of Subsection (B)(2) was not addressed in *Redding*. Thus, in my view, Subsections (A) and (B) and the holding in *Redding* are reconcilable.

In connection with the majority's discussion of NMSA 1978, Section 41–4–6 (Repl.Pamp.1989), and the City's argument that the second sentence of that Section reinstates immunity, I observe that in *Bober v. New Mexico State Fair*, 111 N.M. 644, 808 P.2d 614 (1991), our Supreme Court stated that " 'Section 41–4–6 * * * contemplate[s] waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government * * *.' " *Id.* at 653, 808 P.2d at 623 (quoting *Castillo v. County of Santa Fe*, 107 N.M. 204, 205, 755 P.2d 48, 49 (1988)). This language makes me uncertain about

the basis for the majority's statement that Section 41–4–6 is inapplicable because it applies only to operation and maintenance of works used for diversion or storage of water in public parks and on the grounds of public buildings. For this reason, I propose that Section 41–4–6 does not apply because Section 41–4–8(A) is the more-specific provision applicable to the facts of this appeal. Thus, even if Section 41–4–8(A) conflicts with Section 41–4–6, the more-specific statute governs. *See Redding*, 93 N.M. at 759, 605 P.2d at 1158. It would be reasonable for the legislature to distinguish between maintenance and operation of public utilities and services, *see* § 41–4–8(A), and other publicly owned property, such as reservoirs. *See* § 41–4–6. Therefore, Section 41–4–6 does not apply to situations where the injury arose from the alleged negligent operation of a public service.

For these reasons, I specially concur in the majority's decision to reverse the district court's grant of summary judgment to Defendant and to remand for further proceedings.