896 P.2d 1164

**Dennis BYBEE, Plaintiff–Appellant,**

v.

**CITY OF ALBUQUERQUE, a municipal corporation, Defendant–Appellee.**

**No. 22245.**

Supreme Court of New Mexico.

May 24, 1995.

18

Madison, Harbour, Mroz & Puglisi, P.A., Neils L. Thompson, Shannon A. Parden, Albuquerque, for appellant.

Robert M. White, City Atty., Edwin Macy, Asst. City Atty., Albuquerque, for appellee.

The Baker Law Firm, Jeffrey L. Baker, Albuquerque, for Amicus Curiae AMAFCA.

## OPINION

BACA, Chief Justice.

Appellant Dennis Bybee appeals from a summary judgment granted by the district court in favor of Appellee City of Albuquerque. The sole question presented on certification is whether Appellee is immune from liability under the New Mexico Tort Claims Act (the "Act"). *See* NMSA 1978, §§ 41–4–1 to –29 (Repl.Pamp.1989). The Court of Appeals certified this case to us because the resolution depends on the "proper interpretation and application" of our opinion in *City of Albuquerque v. Redding,* 93 N.M. 757, 605 P.2d 1156 (1980) in light of the immunity statutes. We accepted certification pursuant to NMSA 1978, Section 34–5–14(C) (Repl. Pamp.1990). *See Collins ex rel. Collins v. Tabet,* 111 N.M. 391, 393, 806 P.2d 40, 42 (1991); *Deer Mesa Corp. v. Los Tres Valles Special Zoning Dist. Comm'n,* 103 N.M. 675, 680, 712 P.2d 21, 26 (Ct.App.1985). We address one issue on appeal: Whether Appellee is immune from liability for damages occurring in a diversion channel located in a public park. We affirm.

## I

On September 18, 1992, Appellant and his spouse were at Academy Hills Park. The park, owned and maintained by the City of Albuquerque, consists of two grassy areas divided by a shallow concrete drainage ditch. The concrete structure in question is part of the Albuquerque flood control system operated and maintained by Albuquerque Metropolitan Arroyo Flood Control Authority. The concrete channel collects surface runoff from the hilly regions northeast of the park. A stream of water was flowing through the ditch as Appellant attempted to cross from one grassy area of the park to the other. Appellant slipped on algae growing beneath the water and fell, shattering his ankle. Appellant filed a claim under Section 41–4–8(A) of the Act. The district court granted Appellee's motion for summary judgment that asserted immunity from liability under Section 41–4–6. This appeal follows.

## II

■ Appellant asserts that the trial court improperly granted Appellee's motion for summary judgment. Because there is no dispute as to a genuine issue of material fact, we consider whether the trial court correctly interpreted Sections 41–4–6 and 41–4–8(A). *See Tabet Lumber Co. v. Romero,* 117 N.M. 429, 431–32, 872 P.2d 847, 849–50 (1994) (when facts undisputed and only legal interpretation remains, summary judgment may be properly granted); *Laguna Indus., Inc. v.*

*New Mexico Taxation & Revenue Dep't,* 114 N.M. 644, 648, 845 P.2d 167, 171 (Ct.App. 1992) (interpreting statute is question of law), *aff'd,* 115 N.M. 553, 855 P.2d 127 (1993).

There is no dispute that Appellee is a "governmental entity" within the meaning of the Act. *See* § 41–4–3(B). Under the Act Appellee has statutory immunity from liability for negligent conduct unless the legislature has specifically waived immunity. *See* § 41–4–4. Immunity is waived according to the provisions stated in Sections 5 through 12. Appellant argues Appellee has no immunity from liability under Section 41–4–8(A) because water runoff is "liquid waste" and, therefore, diversion channels are a public utility for which immunity is expressly waived. Section 41–4–8(A) states

> The immunity granted pursuant to Subsection A of Section 4 [41–4–4 NMSA 1978] of the Tort Claims Act does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the *operation of the following public utilities* and services: gas; electricity; water; solid or *liquid waste collection or disposal;* heating; and ground transportation.

*Id.* (emphasis added). Relying on *Redding,* 93 N.M. at 759, 605 P.2d at 1158, and *Espander v. City of Albuquerque,* 115 N.M. 241, 849 P.2d 384 (Ct.App.1993), Appellant contends that the concrete structure dividing the grassy areas of the park is designed for the disposal of liquid waste, namely, runoff water. Our inquiry turns, therefore, to whether "liquid waste disposal" includes surface water runoff and by implication the diversion channels used to carry surface water runoff.

In *Redding,* a cyclist was injured when her front tire slipped through a storm sewer grate and she was thrown from her bike. We held that immunity was waived under Section 41–4–8(A) because the grate could serve no other primary purpose than disposing of liquid waste and debris from the roadway. *Redding,* 93 N.M. at 759, 605 P.2d at 1158. We admitted that "the situation in the case at bar does not fit squarely within any specific provisions of the Tort Claims Act."

*Id.* In analyzing the Act, we considered Section 41–4–8(A) to be more specific than Section 41–4–11(B), which retained immunity for defects in the *plan or design* of a street, sidewalk, or parking area, and stated that the more specific statute governs over the general statute. *Id.* In *Redding,* we had no reason to consider Section 41–4–6.

In *Espander,* the Court of Appeals logically extended *Redding* by holding that the city was liable for flood damage from a diversion channel because "water runoff [going into storm sewers] is a form of 'liquid waste' and that works for the collection and diversion of runoff water are part of a public utility or service." 115 N.M. at 246, 849 P.2d at 389. However, in its analysis, the Court stated that were it not for *Redding,* it would find liquid waste does not include water runoff. *Id.* at 244, 849 P.2d at 387. "[W]e note that our research has not found any authority (other than *Redding* ) for the proposition that the term 'liquid waste disposal' includes diversion of runoff water." *Id.* at 245, 849 P.2d at 388. The Court felt bound by its interpretation of *Redding.* We revisit our decision in *Redding.*

While *Redding* did not hold that all water runoff is "liquid waste" but merely held that a *sewer grate* is part of a system designed to dispose of liquid and solid waste that at times also receives storm-water runoff, this holding is disingenuous because it disregards the distinction between Albuquerque's sewage and drainage systems. *Redding* and *Espander* create an ambiguity in the meanings of "works used for diversion or storage of water" and "liquid waste disposal." We recognize that the term "waste disposal" creates considerable confusion. Therefore, we find it helpful to consider statutory provisions outside the Tort Claims Act that define "wastes." The Water Quality Act, NMSA 1978, §§ 74–6–1 to –17 (Repl.Pamp.1993), defines "wastes" as "sewage, industrial wastes or any other liquid, gaseous or solid substance which may pollute any waters of the state." Section 74–6–2(C). A "sewer system" is any "pipelines, conduits, pumping stations, force mains or any other structures, devices, appurtenances or facilities used for collecting or conducting wastes to an ulti-

mate point for treatment or disposal." Section 74–6–2(D). "Disposal," as described in "sewerage system," occurs "either by surface or underground methods, and includes sewer systems, treatment works, disposal wells and other systems." Section 74–6–2(F). These definitions do not include surface water runoff or mention diversion channels.

In Albuquerque, sewer grates direct storm runoff from the streets into diversion channels. The north and south diversion channels then marshal runoff water throughout the metropolitan area and convey it without prior treatment directly into the Rio Grande. *See* Albuquerque Dist., U.S. Army Corps of Engineers, *Flood Plain Information, Albuquerque Arroyos* (rev. ed. 1974) ("*Albuquerque Arroyos*"); *Electro–Jet Tool and Mfg. Co. v. Albuquerque*, 114 N.M. 676, 680, 845 P.2d 770, 774 (1992) (stating in dicta that maintenance and improvement of Albuquerque ditches undertaken to channel and control runoff and waste water are for benefit of public).

■ Although not briefed by the parties in the present case, we take judicial notice of the plats and plans on file with both the Public Works Department, City of Albuquerque, and the Albuquerque Metropolitan Arroyo Flood Control Authority that show the City of Albuquerque sanitary sewers and storm drainage systems are separate systems. Moreover, Albuquerque Ordinance Section 8–9–3(E) states that

> *Storm water, ground water, rain water, street drainage,* roof top drainage, basement drainage, sub-surface drainage, or yard drainage *shall not be discharged to a public sewer* unless a storm sewer or other reasonable alternative for removal of such drainage does not exist, and then only when such discharge is approved by the Industrial Waste Engineer.

(Emphasis added). Generally storm runoff, an important source of replenishing our water reserves, *see* § 72–1–1, is not directed into Albuquerque's sewer treatment plant.

■ While it is true, as *Redding* states, that silt and debris join the storm runoff as it works its way through the Albuquerque streets, we cannot in good faith call this runoff "liquid waste." We find it hard to believe that the "other systems" for disposal of wastes mentioned above in Section 74–6–2(F) would include direct dumping of liquid wastes into the Rio Grande because the duties of the Water Quality Control Commission include preventing or abating water pollution and regulating disposal of septage and sludge. *See* § 74–6–4. "Wastewater" is "water that is unsuitable by reason of human alteration for beneficial uses without treatment of its altered state." 6 *Waters and Water Rights* 556 (Robert E. Beck ed., 1991). Even were Appellee to devise a method of treatment for nonpoint source pollution, *see* § 74–6A–3(G) ("wastewater facility" may also include "a nonpoint source water pollution control project"), we still could not in good faith call storm runoff "liquid waste." Water has constitutional significance in New Mexico. *See* N.M. Const. art. XVI. Its scarcity and overall importance in our semiarid state precludes our taking such a casual view of water. *State ex rel. Erickson v. McLean*, 62 N.M. 264, 270, 308 P.2d 983, 987 (1957).

■ Although it may seem contradictory to waive immunity for the operation of a sewage system but to maintain it for a diversion system, we presume that the Legislature knows the law and acts rationally. *See Doe v. State ex rel. Governor's Organized Crime Prevention Comm'n*, 114 N.M. 78, 80, 835 P.2d 76, 78 (1992). Without the benefit of legislative history, we can only surmise that the legislature wanted to encourage and freely permit governmental authorities to construct diversion channels. Prior floods have caused millions of dollars worth of property damage and flash floods always present the danger of injury or death to unwary citizens. *See Albuquerque Arroyos, supra.*

When we consider the statutory definitions of "wastes" and our understanding of the difference between "liquid waste" in a sewer system and runoff water in a diversion channel, especially in light of the importance of water in semiarid New Mexico, we cannot agree with and expressly overrule our holding in *Redding* that a storm sewer grate is intended to dispose of liquid waste, 93 N.M. at 759, 605 P.2d at 1158, and *Espander* that

water runoff and the diversion channels constitute liquid waste disposal.

Because the accident occurred in a public park, we now consider whether Section 41–4–6 applies. That section provides, in part, that there is a waiver of immunity for

> damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings. *Nothing in this section shall be construed as granting waiver of immunity for any damages arising out of the operation or maintenance of works used for diversion or storage of water.*

*Id.* (emphasis added). Appellant argues that the second sentence does not apply because, under *Espander*, a diversion channel is a public utility subject to the exception in Section 41–4–8(A). As we stated above, diversion channels do not fit into the exception for sewage systems that dispose of liquid wastes and Appellant's argument must fail.

Under the principles of statutory construction, we first examine the plain meaning of the language used. "[I]f the meaning of a statute is truly clear—not vague, uncertain, ambiguous, or otherwise doubtful—it is of course the responsibility of the judiciary to apply the statute as written and not to second-guess the legislature's selection from among competing policies or ... legislative objective[s]." *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994). The plain language of the statute indicates that the legislature intended to waive immunity for liability for negligent maintenance of public parks except for the "works used for diversion or storage of water." We hold that under Section 41–4–6 Appellee is not liable for damages occurring in its flood control diversion channel even though it would be liable for damages resulting from negligent maintenance of a public park.

### III

Because Appellants have presented no evidence that the concrete channel run-ning through the park is used for the disposal of liquid waste, we find the lower court properly granted Appellee's motion for summary judgment. The judgment is affirmed.

**IT IS SO ORDERED.**

FRANCHINI and FROST, JJ., concur.